IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THOMPSON METAL FAB, INC.,

        Plaintiff,

                            Case No. 3:12-cv-1175-HZ (Lead Case)
                                      3:12-cv-01180-HZ  (Trailing Case)
                                      3:12-cv-01181-HZ (Trailing Case)

                            OPINION & ORDER

        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, et al,

        Defendants.

Jill S. Gelineau
Carson D. Bowler
SCHWABE WILLIAMSON & WYATT, PC
1600-1900 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204

        Attorneys for Thompson Metal Fab, Inc.

Matthew S. Kirkpatrick

1 - OPINION & ORDER

Charles F. Hudson
LANE POWELL LP
601 SW 2nd Avenue, Suite 2100
Portland, OR 97204

      Attorneys for Greenberry Industrial LLC

Stephen J. Odell
Sean E. Martin
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-1024

Brian M. Collins
U.S. DEPARTMENT OF JUSTICE
Environmental and Natural Resources of Division
P.O. Box 7411
Room PHB 3104
Washington, DC 20044-7611

Elizabeth B. Dawson
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611

      Attorneys for United States Department of Transportation, Federal Transit
      Administration, and Federal Highway Administration


HERNANDEZ, District Judge:

      At the center of this action is the construction of a new interstate highway over the

Columbia River, hereinafter referred to as the Columbia River Crossing Project ("CRC Project").

The CRC Project aims to replace two existing interstate highway bridges over the Columbia

River with a new interstate bridge connecting Clark County, Washington, and Multnomah

County, Oregon.[1]  Thompson Metal Fab, Inc. ("Thompson"), a manufacturer of large metal

structures, is located upstream of the proposed CRC Project and uses the Columbia River to

---

[1] On December 7, 2011, the Federal Highway Administration ("FHWA") and the Federal
Transit Administration ("FTA") issued a joint Record of Decision ("ROD") approving the
construction of the CRC Project.

2 - OPINION & ORDER

transport its products downstream.  Thompson challenges the CRC Project under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., and the National Environmental Policy Act ("NEPA").  It alleges that the proposed bridge will affect its use and navigation of the Columbia River because the bridge's proposed vertical clearance is too low to accommodate the clearance that Thompson needs to transport its products.

After Thompson filed its action on July 2, 2012, Greenberry Industrial LLC ("Greenberry")–also a producer of large fabricated metal structures, filed a motion to intervene (doc. #12) as a plaintiff.  Greenberry's proposed complaint mirrors that of Thompson and challenges the CRC Project for essentially the same reasons as Thompson.[2]

Defendants United States Department of Transportation ("U.S. DOT"), FTA, and FHWA filed a motion to dismiss, or in the alternative, motion for summary judgment (doc. #33), arguing that Thompson lacks standing to bring this action under NEPA.  They assert that Thompson's complaint falls outside the purview of NEPA because Thompson only alleges an economic interest, not an environmental interest.

For the reasons set forth below, I conclude that Thompson lacks prudential standing to bring its action under NEPA and accordingly, defendants' motion to dismiss, or in the alternative, motion for summary judgment (doc. #33) is GRANTED.  I also conclude that Greenberry's motion to intervene (doc. #12) must be DENIED because Greenberry's claims are time-barred and because like Thompson, Greenberry also lacks prudential standing.

---

[2] Two actions challenging the CRC Project were filed after Thompson brought this action.  One action was filed by the Coalition for Livable Future, Northwest Environmental Defense Center, and Northeast Coalition of Neighbors.  The other action was filed by the Hayden Island Livability Project and its members, the Hayden Island Manufactured Home Community Homeowners Association and its members, Organizing People-Activating Leaders and its members, and local residents Donna Murphy, Herman Kachold, and Pamela Ferguson.  These two cases were brought pursuant to the APA and NEPA and were consolidated with the case filed by Thompson.

## STANDARDS

### I. Rule 12(b)(6) Motion to Dismiss

When considering a rule 12(b)(6) motion under the Federal Rules of Civil Procedure, a court must "accept as true all of the factual allegations contained in the complaint" and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted); Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009)).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). The facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (citations and internal quotation marks omitted).

### II. Rule 56 Motion for Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case.  Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'"  Id. at 324 (quotation omitted).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ."  Id.  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**III. Rule 24 Motion to Intervene**

Rule 24 provides for intervention as of right and permissive intervention.  See Fed. R. Civ. P. 24(a)-(b).  Rule 24(a) governs intervention as of right.  Fed. R. Civ. P. 24(a).  It provides that a court "must permit anyone to intervene" who "is given an unconditional right to intervene by a federal statute" or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

Rule 24(b) governs permissive intervention. Fed. R. Civ. P. 24(b). It provides that a court "may permit anyone to intervene who . . . is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)-(2). When exercising its discretion under Rule 24(b), the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In determining whether intervention is appropriate, courts "are guided primarily by practical and equitable considerations" and "generally interpret the requirements broadly in favor of intervention." Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted). "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted).

## DISCUSSION

### I. Thompson's Standing

Defendants argue that this court lacks jurisdiction over Thompson's claim because Thompson lacks both constitutional standing and statutory standing.

#### A. Constitutional Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citation omitted). Thompson does not contend that it has Article III standing. Although Thompson fails to argue that it has Article III standing, Thompson's failure to do so is irrelevant because as discussed below, Thompson lacks statutory standing.

### B. Statutory Standing

When a plaintiff challenges an agency decision under the APA, as here, it must demonstrate that it satisfies the "the non-constitutional or prudential standing requirements", which inquires "whether a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit." Nuclear Info. and Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 950 (9th Cir. 2006) (quotation marks and citation omitted). To establish prudential standing under the APA, "the plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990) (emphasis in original; internal quotation marks and citation omitted). The Ninth Circuit has previously "described the zone of interests that NEPA protects as being environmental . . . [and has] consistently held that purely economic interests do not fall within NEPA's zone of interests". Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 939-40 (9th Cir. 2005) (citations omitted); see also Nev. Land Action Ass'n v. U.S. Forest Serv., 8 F.3d 713, 716 (9th Cir. 1993) ("The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions.") (Citation omitted).

Thompson maintains that it has statutory standing because it uses the Columbia River, the language of 40 C.F.R. § 1508.14 supports the conclusion that it has statutory standing, and

7 - OPINION & ORDER

NEPA documents treat navigation of the Columbia River as an environmental concern.  I
disagree.

### 1. Thompson's Use of the Columbia River

Defendants argue that because Thompson's interest is purely economic, it lacks
prudential standing to bring its NEPA claim.  To demonstrate that Thompson's interest is purely
economic, Defendants provide excerpts from the United States Coast Guard Columbia River
Crossing Preliminary Hearing held on September 21, 2006, which show that Brad Murphy, a
representative for Thompson, only expressed an economic interests in the CRC Project.
McAvoy Decl., Ex. A, p. 3 (doc. #35).  The excerpts show that at the September 21, 2006,
hearing, Murphy emphasized Thompson's need "to stay competitive in the market" and that the
proposed bridge would "be a big, big hindrance" on Thompson "business-wise".  Id.  Defendants
also proffer an email by Thompson's president, John Rudi, to Ginger Metcalf, the Executive
Director of Identity Clark County.  Id., Ex. B, p. 1 (doc. #35).  In the email, Rudi conveyed the
importance of the bridge height to Thompson's business and in turn, the local labor force,
explaining that one of the projects it had done in the past had employed "at least 1000-1500
job[s]" which would have otherwise "likely . . . gone to Asia."  Id.  Lastly, defendants present a
letter dated March 18, 2011, by Rudi to the Oregon Department of Transportation.  Id., Ex. C, p.
1 (doc. #35).  In the letter, Rudi restated that Thompson is "an important asset to the region's
industrial job base" and iterated that the ability to transport products down the Columbia River
"has given [Thompson] the ability to stay competitive in a business that was largely moved
overseas."  Id.

Thompson does not assert or proffer any evidence establishing that it has any
environmental interest in the CRC Project.  Rather, it contends that its economic interest falls

within NEPA's zone of interest because "[t]he impacts of the Columbia River Crossing project on [it] are directly related to Thompson['s] use of the environment and (lost) productivity that will result from the project."  Thompson Resp.,  pp. 2, 8.  In support of its contention, Thompson relies heavily on Ashley Creek, 420 F.3d at 940, where the Ninth Circuit stated that plaintiff there "never claimed to be protecting an interest that [wa]s even remotely intertwined with the environment" and "ha[d] not linked its pecuniary interest to the physical environment or to the environmental impacts of the project evaluated in the [Environmental Impact Statement ("EIS")]".  Thompson contends that under Ashley Creek, it has prudential standing because its economic interests are "intertwined" with the environment and are "linked" to the physical environment or to the environmental impacts of the CRC Project.  Thompson Resp., p. 6.

Thompson's arguments are unavailing.  In Ashley Creek, 420 F.3d at 936-40, the Ninth Circuit found that plaintiff, a manufacturer of phosphate-based fertilizer, did not have any "interest in the local . . . environment" and held that plaintiff's "purely economic interests" fell outside of NEPA's zone of interests.  Contrary to Thompson's assertion, the Ninth Circuit did not hold that a plaintiff's purely economic interest falls within NEPA's zone of interest simply when that interest is "remotely intertwined with the environment" or "linked" to the physical environment or to the environmental impacts of a project.  See Ashley Creek, 420 F.3d at 940.

Indeed, I find that Ashley Creek supports the conclusion that Thompson lacks prudential standing under the circumstances here.  Like the plaintiff in Ashley Creek, 420 F.3d at 940, Thompson only has a pecuniary interest and does not have any interest in the local environment. The Ninth Circuit has repeatedly made clear that a plaintiff such as Thompson, which asserts only "purely economic injuries[,] does not have standing to challenge an agency action under NEPA".  Id. (citation omitted); see also Nev. Land Action Ass'n., 8 F.3d at 716 ("[A] plaintiff

who asserts purely economic injuries does not have standing to challenge an agency action under NEPA.") (Citations omitted).  Suffice it to say, I do not read Ashley Creek, or any other authority cited by Thompson, as supporting the determination that Thompson's purely economic interest falls within NEPA's zone of interest merely because it uses the Columbia River to further its economic interest or because its "productivity" would be adversely affected by the CRC Project.

### 2. NEPA's Implementing Regulations

Thompson contends that its economic interest falls within NEPA's zone of interest because NEPA requires an EIS to be completed when a project may significantly affect the quality of the "human environment" and because 40 C.F.R. § 1508.14 requires the EIS to discuss social, natural, and physical effects as well as economic effects when they are all "interrelated".[3] Thompson's reliance on when an EIS must be prepared and what the EIS must discuss simply has no bearing on whether Thompson has prudential standing in this instance.  Other than the plain language of 40 C.F.R. § 1508.14 and its own interpretation of that regulation, Thompson does not cite any authority supporting its theory.  Indeed, 40 C.F.R. § 1508.14 does not even mention standing, let alone set forth when plaintiffs with purely economic interests have prudential standing under NEPA.

---

[3] 40 C.F.R. § 1508.14 states in its entirety:
> Human environment shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment. (See the definition of "effects" (§ 1508.8).)  This means that economic or social effects are not intended by themselves to require preparation of an environmental impact statement.  When an environmental impact statement is prepared and economic or social and natural or physical environmental effects are interrelated, then the environmental impact statement will discuss all of these effects on the human environment.

Simply put, Thompson's reliance on when an EIS must be produced and what the EIS must discuss, without more, does not support the conclusion that Thompson has prudential standing under the circumstances here.

### 3. NEPA Documents

Thompson argues that because it uses the Columbia River and because the Final Environmental Impact Statement ("FEIS") and ROD discuss impacts to river users and treat navigational impacts as "environmental issues", it has prudential standing.  Thompson Resp., p. 11.  Thompson's arguments lack merit.

Simply because the FEIS and ROD discuss various impacts to users of the environment–in this case, river users–does not necessarily give those users prudential standing or bring their purely economic interests within NEPA's zone of interest.  I find no law, and Thompson does not cite any, which support such a proposition.  Furthermore, I disagree with Thompson's bald assertion that the FEIS and ROD treat navigational impacts as environmental issues and disagree that the language in the FEIS and ROD transforms Thompson's purely economic interest into an environmental interest protected under NEPA–especially where the Ninth Circuit has consistently held that purely economic interests fall outside the purview of NEPA.  See Ashley Creek, 420 F.3d at 939-40 ("We have long described the zone of interests that NEPA protects as being environmental. . . . Accordingly, we have consistently held that purely economic interests do not fall within NEPA's zone of interests . . . .") (Citations omitted); see also Nuclear Regulatory Comm'n, 457 F.3d at 950 ("It is well settled that the zone of interests protected by NEPA is environmental.") (Citing Ashley Creek, 420 F.3d at 940).

In sum, the record before me establishes that Thompson lacks prudential standing. Accordingly, defendants' motion for summary judgment is granted.[4]

## II. Greenberry's Motion to Intervene

Greenberry asserts it should be allowed to intervene as a plaintiff because its complaint "mirrors" that of Thompson's and because its "claims are the same as those" asserted by Thompson. Greenberry Mem. in Supp., pp. 2, 18. Greenberry concedes that it filed its motion to intervene outside of the 180-day statute of limitations set forth in 23 U.S.C. § 139(l), but contends that its claims are not time-barred because they relate back to Thompson's complaint. I am not persuaded by Greenberry's arguments and conclude that intervention by Greenberry would not be proper because its claims are time-barred and because like Thompson, it lacks prudential standing.

### A. Statute of Limitations

Both parties agree that the former version of 23 U.S.C. § 139(l), effective August 10, 2005, to September 30, 2012, applies to Greenberry's claims. That version of the statute provides that "a claim arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway or public transportation capital project shall be barred unless it is filed within 180 days after publication of a notice in the Federal Register . . ." 23 U.S.C. § 139(l).[5] Here, Greenberry was required to file its claims "on or before July 3, 2012". Defs.' Resp., Ex. A, p. 1. Greenberry, however, failed to file its claims by that date. Greenberry's failure to timely file its claims within the statute of limitations period set forth

---

[4] Having concluded that Thompson lacks prudential standing because its economic interest falls outside of NEPA's zone of interest, I decline to address whether Thompson waived its right to bring this action by failing to raise any environmental issues during the NEPA administrative process.

[5] The current version of 23 U.S.C. § 139(l), effective October 1, 2012, shortens the 180-day statute of limitations to 150 days.

under 23 U.S.C. § 139(l) is fatal.  Although Greenberry cites a number of authorities for the

proposition that its claims relate back to Thompson's complaint, none of those authorities

support a determination that claims otherwise time-barred under 23 U.S.C. § 139(l) may relate

back to another party's complaint.  Greenberry's motion to intervene is therefore denied.

### B. Zone of Interest

Greenberry contends that its economic interest falls within NEPA's zone of interest

because it conducts business and relies on the Columbia River; harm to its economic interest

would be "caused by or intertwined with" the bridge's impact on the environment; and the

NEPA documents, including the draft EIS, FEIS, ROD, and the Work Plan for Finalizing Bridge

Height and Submitting Bridge Permit Application (the "Work Plan") recognize that the bridge

height's impact on navigation is a "NEPA issue".  Greenberry Reply, pp. 14, 15, 17-18.

Greenberry asserts the same claims as Thompson, raises essentially the same arguments as

Thompson, and cites many of the same cases cited by Thompson.  See Greenberry Mem. in

Supp., p. 18; Mot. to Intervene, Ex. 1, pp. 1-7.

For the same reasons that Thompson's claims fail because they fall outside of the zone of

interest of NEPA, Greenberry's claims also fail.  None of the authority relied on by Greenberry

establish that it has prudential standing.  Similarly, none of the NEPA documents relied on by

Greenberry establishes that its purely economic interest falls within NEPA's zone of interest.

See Ashley Creek, 420 F.3d at 940 (a "plaintiff who asserts purely economic injuries does not

have standing to challenge an agency action under NEPA") (citation omitted); see also Ranchers

Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric., 415 F.3d

1078, 1103 (9th Cir. 2005) ("[A] NEPA claim may not be raised by a party with no claimed or

apparent environmental interest.") (Citation omitted).

In sum, Greenberry fails to meet its burden of establishing that intervention under Rule 24 would be proper where its claims are time-barred under 23 U.S.C. § 139(l) and where it asserts only a purely economic interest. Accordingly, Greenberry's motion to intervene is denied.[6]

## CONCLUSION

Based on the reasons above, defendants' motion for summary judgment (doc. #33) is GRANTED and Greenberry's motion to intervene (doc. #12) is DENIED. Oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this _____ day of _____, 2013.

MARCO A. HERNANDEZ
United States District Judge

---

[6] Because Greenberry lacks prudential standing, I decline to address whether Greenberry waived its right to pursue this action when it failed to raise any environmental concerns during the NEPA administrative process. In addition, I decline to address defendants' assertion that a court lacks subject-matter jurisdiction over claims time-barred under 23 U.S.C. § 139(l). Whether this Court lacks subject-matter jurisdiction over Greenberry's claims does not affect my ultimate determination that Greenberry's claims are time-barred and that Greenberry lacks prudential standing.